UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

STEVEN KULIN,                                      6:08-CV-6293-TC

                   Plaintiff,

          v.                                        ORDER

DESCHUTES COUNTY, a political
subdivision of the State of Oregon,

                              Defendant.
_____

COFFIN, Magistrate Judge:

## INTRODUCTION

Plaintiff brings claims in this action pursuant to the American with Disabilities Act (42

U.S.C. Sections 12131 -133)(ADA) and the Fair Housing Amendments Act of 1988 (42 U.S.C.

Sections 3601-3631)(FHAA).[1]

Presently before the court is plaintiff's motion (# 90 ) for partial summary judgment on the

ADA claim and defendant's motion (#114) for summary judgment on both claims.

_____

[1]A §1983 claim has been previously dismissed.

Page 1 - ORDER

### FACTUAL BACKGROUND

This case appears to have been one of first impression for the County, and the controversy between the parties has at times been contentious. The issues have been proliferated to the point where the record is voluminous, but the essence of the case is that plaintiff is a severely disabled individual who supports himself and his family by operating a business on his residential property, and the ultimate question is whether he is entitled to a modification of the County's rules on the permissible space allocated to the business and the number of employees working there as an accommodation for his disabilities.

In more detail, Steven Kulin (Kulin) operates his business from his home on a five acre lot that he purchased in 1998. Kulin has had *retinitis pigmentosa* since birth and is legally blind. Additionally, at the age of 12, Kulin sustained permanent and disabling leg injuries in an automobile accident which has resulted in the development of osteoarthritis of his tibia and ligamentous laxity. Further, Kulin suffers from low and mid back pain as well as neck pain as the result of a severe back injury that he sustained as a young adult.

Since owning his five acre lot, Kulin has made several improvements to the property including the construction of a 900-square-foot detached residential garage in 2001, the construction of a 1,700-square-foot barn/shop in 2004, and the construction of a 4,940 square-foot warehouse in 2006. Each of these improvements was completed only after Kulin had obtained planning and building permits from defendant Deschutes County ("the County").

On December 14, 2006, after the warehouse had been constructed at a cost of $120,000, Kulin received a notice of violation from the County asserting that construction of the warehouse violated the County's Home Occupation Code ("the Code"). The violation had first been filed as

Page 2 - ORDER

an interoffice complaint by a county code enforcement technician with the County on August 7, 2006.

After receiving the notice of violation, Kulin contacted the Deschutes County Community Development Department, advised them that he was blind and running a business as a home occupation on his property, and asked what he needed to do to bring his business into compliance. Kulin was advised to comply with the requirements of the Code or to propose a text amendment to allow an exception for the disabled.

In early 2007, Kulin's attorney submitted a proposed amendment to authorize exceptions to the Home Occupation Code to accommodate persons with disabilities. On March 8, 2007, the County Planning Commission considered the proposed amendment in a staff report. On March 22, 2007, and April 26, 2007, the Planning Commission considered the proposed amendment at public hearings that Kulin and his attorney attended. On June 14, 2007, the Planning Commission recommended that the Board of Commissioners approve amendment of the Home Occupation Code without a provision addressing accommodations for the disabled.

On January 4, 2008, Kulin filed a variance application with the County to request an accommodation pursuant to the ADA. Under the Home Occupation Code, a home occupation participant may not employ more than two employees on his property, and the home occupation may not occupy more than 35 percent of the combined floor area of the participant's dwelling, including an attached garage and one accessory structure. In his variance application, Kulin requested an exception to these two limitations. Specifically, Kulin requested that he be allowed to employ a total of five employees. Kulin also requested that he be allowed to use the warehouse on his property to store inventory on approximately six times the normal amount of permitted floor area.

Page 3 - ORDER

On February 26, 2008, a Deschutes County Hearings Officer held a public hearing on Kulin's

variance application. On May 16, 2008, the Hearings Officer issued her decision, denying Kulin's

variance request for additional square footage in which to store inventory and approving only two

of three additional employees that had been requested.

Plaintiff alleges in this action that the variance he obtained from the County's "Home

Occupation Code" was insufficient to provide him with meaningful access to government programs

and services and rendered him unable to use and enjoy his dwelling. Plaintiff also alleges, among

other things, that the County should have established a specialized "accommodation procedure" to

permit him to obtain his requests.

The parties' Joint Status Report states as follows:

> Comes now plaintiff and defendant and make this Joint Status Report:
> A partial variance to Deschutes County Zoning Ordinance home
> occupation standards was approved by the County hearings officer
> based upon the ADA as a reasonable accommodation. The variance
> allows Mr. Kulin to have a total of four employees on site (two
> employees under the home occupation ordinances plus two additional
> employees due to the partial grant of the requested variance by the
> hearings officer) . The County hearings officer denied Mr. Kulin's
> ADA variance application for the business floor area requirements
> of the County's home occupation standards and also denied his
> request for one additional employee. The County did not appeal the
> decision and Mr. Kulin ...dismiss[ed] his LUBA appeal.
>
> It is the County's understanding that 1) Mr. Kulin will apply to
> the County for a conditional use permit upon the completion of this
> litigation and 2) the County would process such application consistent
> with its established practice, except that the decision would reflect
> what the court has ruled in this case as to whether or not under the
> ADA and as a reasonable accommodation Mr. Kulin is entitled to
> one additional employee ( beyond what is described ... above) and
> whether or not he is entitled to the use of more floor area for a home
> occupation than is allowed under Deschutes County Zoning
> Ordinance home occupation standards.
>
> Mr. Kulin's understanding is that the court has authority to issue
> a mandatory injunction requiring a conditional use permit to be issued

immediately consistent with his request for reasonable accommodation.

A landscape management decision has been issued approving the reconstruction of [a] building that was damaged by fire in January 2011. Mr. Kulin is now applying for a building permit. It is the County's position that these issues are not a part of this lawsuit. However, both parties agree that the ultimate outcome of this federal court litigation as described ... above will apply to the use of the building for a home occupation.

It is the County's policy to not take enforcement action while an action is still pending. The County will continue to follow this policy and not take any enforcement action against Mr. Kulin as to the operation of his home occupation business until the final completion of this federal lawsuit.

The parties agree that the U.S. District Court for the District of Oregon may exercise continuing jurisdiction over this matter as the parties will continue to interact over future permit compliance issues.

Joint Status Report (#145).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir.

Page 5 - ORDER

2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

DISCUSSION

I.     The ADA Claim

Kulin's first claim for relief alleges that the County violated Title II of the ADA. In his claim for relief, Kulin alleges that the County violated the ADA: 1) by failing to implement consultation and request mechanisms, notice of protections, and grievance procedures; 2) by proceeding in the matter with deliberate indifference; and 3) by failing to grant Kulin's requested accommodations in their entirety.

1.     The County's Zoning and Variance Process

Kulin's attempts to obtain accommodation pursuant to the ADA were initially stymied by the County's position that the ADA was inapplicable in the context of land use regulations. It was only after the February 26, 2008, proceedings before the Hearings Officer that the County ultimately conceded that the ADA applied to its zoning decisions and that plaintiff is a qualified individual with a disability. The County's delay in addressing the ADA issues in this case has been an obvious

Page 6 - ORDER

source of friction between the parties and undoubtedly has contributed to the rather convoluted history of the case and the multiplication of issues. At bottom, however, I reject plaintiff's arguments to the contrary and find that the County requiring plaintiff to go through its zoning and variance process is not by itself a violation of the ADA under the circumstances of this case. Courts have held that the zoning process, including hearings on applications for conditional use permits, serves the purpose of enabling a city to make a reasonable accommodation in its rules, policies and practices. See , e.g., United States v. Village of Palatine, Ill., 37 F.3d 1230, 1233 (7th Cir. 1994). A municipality usually must be afforded the opportunity to make such an accommodation. Id. Plaintiffs usually must give a local governing body the chance to accommodate them by adjusting the zoning code before challenging a zoning decision in court. Oxford House -A v. City of University City, 87 F.3d 1022, 1024-25 (8th Cir. 1996). Any claim plaintiff asserts that is premised on the necessity of going through the zoning process is unsustainable.

     2.    No Deliberate Indifference

Turning next to the issue of whether Kulin may recover compensatory damages under the ADA, such requires proof that the County's handling of this matter rose to the level of "deliberate indifference." See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998); Duvall v. County of Kitsap, 260 F.3d 1124, 1138-41 (9th Cir. 2001).

The record before me establishes that the County was not deliberately indifferent in the mechanisms and process utilized to address plaintiff's request for an accommodation. It is worth noting in general that the variance decision came after written submissions, a hearing before a neutral official, who applied the ADA analysis to her decision, and an opportunity to supplement the record. The decision was provided in a lengthy and detailed written opinion by the Hearings

Officer. More important, the County has not taken any enforcement action as to the operation of

Kulin's home occupation business for over four years and has agreed to stay such action pending the

outcome of this litigation, thus allowing Kulin to continue making revenue from utilizing the extra

floor space and employees during such time. It certainly cannot be said that the County's handling

of this matter was a result of conduct that was "more than negligent and involved an element of

deliberation," or that defendant had knowledge that a harm to a federally  protected right was

substantially likely and failed to act on that likelihood. See Duvall, 260 F.3d at 1139, City of Canton

v. Harris, 489 U.S. 378, 389 (1988).

In short, despite the Hearing Officer's decision resulting in a lesser accommodation than

sought by plaintiff, the County has acquiesced in a de facto "full" accommodation as the parties

await the federal court's determination of the issues. Thus , I reject the plaintiff's argument that the

County's handling of this matter amounted to "deliberate indifference" and dismiss his claim for

compensatory damages .[2]

3.      Requested Accommodations

Turning to the remainder of the ADA claim, Title II of the ADA requires that no qualified

individual shall, on the basis of his disability, be excluded from participation in the benefits of the

services, programs, or activities of a public entity. 42 U.S.C. §12132. A public entity must make

reasonable modifications in its polices, practices, or procedures when necessary to avoid

discrimination on the basis of an individual's disability, unless it can demonstrate that the

modifications would impose an undue financial or administrative burden or would fundamentally

---

[2]Defendant's argument that plaintiff is not the real party in interest and does not have
standing to bring this action because his corporation suffered the alleged monetary injury is not
persuasive, but is moot in light of my ruling on his claim for damages.

alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7); Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008). An accommodation imposes an undue financial or administrative burden if its costs are clearly disproportionate to the benefits it will produce. Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2nd Cir. 1995). However, simply because a requested accommodation would alter a substantive rule or regulation does not render it unreasonable or unduly burdensome. See Martin v. PGA Tour, 994 F. Supp. 1242, 1247 (1998).

Kulin contends that summary judgment in his favor on the ADA claim is appropriate because he was denied the benefits of the Home Occupation Program due to his disability.

The County contends that it is entitled to summary judgment on the ADA claim because the partial denial of plaintiff's requested accommodations was not because of his disability but because the requested accommodations were not necessary or reasonable and required a fundamental alteration of the Home Occupation Program. It cites Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978-79 (9th Cir. 1997), for the proposition that in order to prevail on his ADA claim, Kulin must prove that the County denied him the benefits of the County's Home Occupation Program *solely by reason of his disability*. (emphasis supplied by County). Thus, the County essentially contends that the ADA claim fails because Kulin is unable to show that the requested modifications to its zoning laws would have been granted to a non-disabled applicant and were not denied to Kulin solely because of his disability. However, the Ninth Circuit has subsequently explained that the Weinreich holding is not so limiting. Thus, in McGary v. City of Portland, 386 F.3d 1259, 1267 (9th Cir. 2004), the court noted that:

> "(Title II of the ADA) guards against both intentional discrimination and simple exclusion from services resulting not from intentional discriminatory acts but rather from inaction, thoughtlessness, or equal treatment when particular accommodations are necessary . . . In the

Page 9 - ORDER

> context of disability, therefore, equal treatment may not beget
> equality and facially neutral policies may be, in fact, discriminatory
> if their effect is to keep persons with disabilities from enjoying the
> benefits of services that, by law, must be available to them."

The court further observed:

> we have also recognized that the question of what constitutes a
> reasonable accommodation under the ADA "requires a fact-specific,
> individualized analysis of the disabled individual's circumstances and
> the accommodation that might allow him to meet the program's
> standards." (citation omitted).

Accordingly, I conclude that Kulin is not required to establish that the County intentionally

discriminated against him solely on the basis of his disability in order to prevail on his ADA claim,

and that the essential question presented is whether the requested accommodations were necessary

and reasonable for him to participate in the Home Occupation Program in light of his disabilities.

Perhaps in other circumstances, a determination of whether an accommodation is necessary

and reasonable would need to be made prior to, or at the onset of, participation in a public service,

program, or activity. The circumstances of Kulin's case, however, are unique for several reasons.

First, Kulin did not request an accommodation prior to, or at the onset of, his participation in the

Home Occupation Program. Rather, he participated in the program for eight years, beginning in

1998 when he purchased the property, before requesting a reasonable accommodation.[3]  Second, it

---

[3]Although not necessary for my findings today, it is worth noting that Kulin perhaps did not require an accommodation when he began participating in the Home Occupation Program. Since 1998, Kulin has attempted to maintain several home occupations that were not feasible due to his disabilities. For instance, Kulin was unable to maintain a greenhouse because he could not pull the weeds from the planter boxes, work on his knees, or carry the heavy supplies such as fertilizer. Kulin was also unable to maintain a music production studio because the ergonomics to sit and play instruments made it too painful to continue. Kulin's development of a business on his property that allows him to accommodate his disabilities, to be self-reliant, and to support his family has been a process that is influenced by the progressive needs of his disabilities.

Page 10 - ORDER

was not until after he received notice of a Code violation from the County in 2006, and after a series of actions, or inactions, by the County, that Kulin expressly informed the County of his disability and requested a reasonable accommodation in January of 2007. Third, since receiving notice of a Code violation in 2006 and up to the present, Kulin has continued to participate in the program. All of these specific circumstances must be taken into consideration when determining whether the accommodations at issue in this case are (a) necessary to avoid discrimination on the basis of Kulin's disability, (b) reasonable, and (c) unduly burdensome.

### a.     The Accommodations Are Necessary and Reasonable

I first consider whether the requested accommodations are necessary to avoid discrimination on the basis of Kulin's disability. In his variance application to the County, Kulin sought accommodation regarding the two-employee and 35 percent maximum floor area limitations under the Home Occupation Program. Specifically, Kulin requested that he be allowed to employ five employees and to use his warehouse to store inventory on approximately six times the normal amount of permitted floor area.

### i.     Additional Employees

Kulin asserts that, although the Home Occupation Program permits him to have two employees, he requires a total of five employees to operate his business due to his disability. Specifically, Kulin asserts that two additional employees are necessary to function as his personal replacements; one employee serves as his eyes in the administration of the business and another serves as his physical replacement in the warehouse. Kulin further asserts that a third additional employee is necessary to cover the cost associated with the replacement employees.

In her Decision, the Deschutes County Hearings Officer determined, and the County does not

Page 11 - ORDER

appear to argue otherwise, that based on Kulin's disability, two additional employees are necessary to enable him to work in his business and, therefore, to avoid discrimination on the basis of his disability. However, the Hearings Officer noted that a third additional employee presents "a closer question" because the employee was needed to cover the cost associated with two replacement employees rather than to directly support Kulin or perform what would ordinarily be his duties. Accordingly, she concluded that the third employee was related more to the business's profitability than to Kulin's disability, and, therefore, that limiting Kulin to four employees was a reasonable accommodation and did not discriminate against him on the basis of his disability.

Although I agree that the third additional employee presents a closer question, I do not agree that because the employee is needed to address the costs of two replacement employees that the third employee is therefore more related to the business' profitability than to Kulin's disability. To the contrary, I find that under the circumstances of Kulin's case, allowing him to hire two replacement employees is a reasonable accommodation that is necessary to avoid discrimination based on his disability. In essence, permitting a third additional employee is a necessary extension of that accommodation because Kulin cannot employ two replacement employees if he cannot cover the cost of doing so. In other words, hiring a third additional employee would not be a factor but for Kulin's disability. Thus, hiring a third additional employee is related to Kulin's disability and is necessary if he is to be allowed to participate in the Home Occupation Program.

ii.     Increased Storage Space

Kulin also asserts that although the Home Occupation Program imposes a 35 percent maximum floor area limitation, he should be allowed to use the warehouse on his property to store inventory. Specifically, Kulin argues that he must maintain his business on-site as a home

Page 12 - ORDER

occupation because, due to his disabilities, it is the only occupation that allows him to take frequently needed rest breaks so that he can work a full day as well as feel safe and comfortable. Kulin further argues that because he must maintain his business on-site, the increased storage space is necessary for him to have an equal opportunity to earn a living on his property.

The County argues that the fact that Kulin has been earning a living on his property from 1998 forward belies his claim that further expansion of his storage capacity is necessary to allow him an equal opportunity to earn a living on his property. The County further argues that the purpose of the Americans with Disabilities Act is to place those with disabilities on an equal footing rather than to give them an unfair advantage by providing them with greater rights than non-disabled individuals. See Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir. 1996). Specifically, the County asserts that Kulin's requested storage space accommodation is related more to gaining a financial advantage by operating his business on a residential, farm use property, and thereby avoiding costs that might be incurred if the business were located in an industrial zone, than to his disability.

Additionally, in her Decision, the Deschutes County Hearings Officer stated that while Kulin offered support as to why relocation of his business or any part thereof off-site would not be economically feasible, he offered no support as to why relocation would not be feasible because of his disabilities. Thus, the Hearings Officer determined that the requested accommodation was related more to the business' profitability than to Kulin's disability, and, therefore, that application of the 35 percent floor area limitation did not discriminate against Kulin on the basis of his disability.

It may well be that under certain scenarios, a request by a person who is disabled to increase the maximum floor area limitation in order to earn a living on his property when relocation is not

Page 13 - ORDER

economically feasible would be more related to profitability than to a disability and would therefore be unnecessary. However, the court must consider the specific facts of Kulin's case in order to determine whether his request for increased storage space is a reasonable accommodation that is necessary to avoid discrimination on the basis of his disability. See Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996) ("the determination of what constitutes reasonable modification is highly fact-specific requiring case-by-case inquiry.")

Kulin began participating in the Home Occupation Program in 1998 because it is necessary for him to work from home due to his disabilities. Specifically, he must maintain his business on-site as a home occupation because, due to his disabilities, it is the only occupation that allows him to take frequently needed rest breaks so that he can work a full day as well as feel safe and comfortable. While Kulin has attempted to operate other businesses on his property, his current business is the only one that has been feasible for him given his disabilities.

Moreover, while it is necessary for Kulin to work from home, he cannot do so if he cannot earn a profit to support himself and his family. Although it may be that Kulin has been earning a living on his property since 1998, he applied for and received a permit to build a warehouse on his property in 2006, which he has been using in his business since that time. The history of the issuance of the building permit is clouded by the County's loss of Kulin's permit file. The County suggests that Kulin misrepresented the purpose of the addition to his barn by stating that it was for "storage and hobbies." [Statement of Intended Use dated June 26, 2006.] However, Kulin cites to a June 23, 2006 entry on county records pertaining to a Code Enforcement Complaint reflecting notice that the additional 2780 square feet was " to be used as commercial storage building for home occupation."

The latter entry dispels the County's contention that Kulin hid the ball in his application.

Page 14 - ORDER

Clearly, he gave notice of his desire to use the building addition in connection with his home occupation, and thereafter the County issued the permit and Kulin expended $120, 000 to construct the addition.

It is a fair inference to draw at this point that the County's belated recognition of the application of the ADA to its land use decisions may well have contributed to the manner in which the events unfolded. County employee Paul Bliksted, who authorized the permit, testified in his deposition that Kulin had informed him in a telephone conversation that he was "legally blind." (Dep. Testimony , p. 14.) He also acknowledged that he had no training on the ADA. As noted previously, the County did not believe at the time that the ADA applied to its land use decisions. The County simply did not consider whether Kulin's disability had any bearing on his request to use the barn addition for his home occupation.

Given this context, I am unable to conclude that Kulin was somehow at fault for the County's issuance of the permit and his subsequent reliance on the permit when he invested funds in the storage addition.

It is important to note that the Hearings Officer, although agreeing with the County that allowing an accommodation to Kulin on this issue would set a precedent that could encourage the proliferation of larger businesses in EFU-zoned parcels, also found that the operating characteristics of Kulin's business were compatible with surrounding land uses. As she noted, "... letters in the record from neighbors bear out[ ] that [Kulin's] existing business does not now and will not in the future have adverse impacts on resource values and other uses on the surrounding EFU-zoned land

/ / /

/ / /

Page 15 - ORDER

because customers do not come to the property, and with the exception of truck pickups and deliveries[4] business activities occur entirely within the business structures."

The circumstances of this case bring to mind an analogous land use controversy before this court some years ago. There, like here, the plaintiff, Yavorhi Cam, received a permit to construct a barn in an EFU zone and used the barn for storage (of agricultural implements). Thereafter, he and a large faction of his farmer neighbors split from the pre-existing community church, prompting Cam to move his tractors and blueberry pallets out of the barn whereupon he began conducting prayer services inside the building after blessing it as a church. See Cam v. Marion County, 987 F.Supp. 854 (D. Oregon 1997). The pre-existing church complained to the County, and, because the EFU zoning did not permit "new" churches but only allowed expansion of pre-existing churches, the County ordered Cam to cease and desist having prayer services in his barn.

When Cam applied for a permit to convert his barn into a church, the Hearings Officer denied the application because the proposed use was not an expansion of the existent church but was instead the creation of a "new" church in schism with the old church, even though she also determined that its use as a place of worship would not present a significant impact on farm use nor be incompatible with other relevant permit criteria (e.g. fire and safety codes).

As was noted in Cam:

> As far as the state is concerned, whatever impact the building had on high value farmland occurred when it was first built. Whether the plaintiffs store pallets, tractors, or Bibles and sacred relics inside the building no longer matters in terms of the impact the building has on the land it occupies. The Hearings Officer expressly found that the use of the building as a church would not present any significant

---

[4]Merchandise is delivered to the premises every 60 days and orders are picked up daily for delivery by UPS.

impact on farm use or farming practices in the area.

Cam, 987 F. Supp. at 860.

Accordingly, I found that the application of the regulation to the Cam's barn was not rationally related to the legitimate interests which the regulation was intended to promote - the preservation of farm land - and thus ruled that the application violated the Free Exercise Clause of the First Amendment.

Although Kulin's case does not involve First Amendment principles, it does implicate the question of what is a "reasonable" accommodation under the ADA. To reiterate, simply because a requested accommodation would alter a substantive rule or regulation does not render it unreasonable or unduly burdensome. See Martin, 994 F. Supp. at 1247.

The consideration of whether an accommodation is reasonable requires a fact-specific, case-by-case analysis that takes into consideration all of the costs of the proposed modification to both parties. Wong v. Regents of the Univ. of Cal., 192 F.3d 807, 818 (9th Cir.1999). "Some of these costs may be objective and easily ascertainable. Others may be more subjective and require that the court demonstrate a good deal of wisdom in appreciating the intangible but very real human costs associated with the disability in question." Wis. Cmty. Serv., Inc. v. City of Milwaukee, 465 F.3d 737, 752 (7th Cir. 2006).

Kulin argues that his requested accommodation of increased storage space is reasonable because it would neither cause an undue financial or administrative burden for the County nor would it undermine the purpose of the Code.

In her Decision, the Hearings Officer determined that the requested accommodation is unreasonable because it would fundamentally alter the nature of the county's land use regulations

Page 17 - ORDER

related to home occupations. Specifically, she concluded that although the operating characteristics of the business are compatible with surrounding land uses, the accommodation would nonetheless be inconsistent with the purpose of the home occupation standards and the comprehensive goals, objectives, and policies to preserve and protect EFU-zoned land for agricultural uses. Moreover, she expressed concern that approval of the accommodation might open the door for the establishment of non-farm related businesses on EFU-zoned parcels in contravention of those policies.

Although this issue presents a closer question, under the circumstances of this case, the costs of granting Kulin's request are clearly not disproportionate to the benefits that the accommodation will produce and will result in no cost to the County. First, in considering the costs of this accommodation to both parties, it is significant that the County has engaged in a series of actions, or inactions, over the course of five years that would make it unreasonable to now deny Kulin the use of his warehouse. From May of 2001 through July of 2006, Kulin began making improvements and investments that were related to his home occupation business. These improvements and investments included remodeling an office area in his residential garage, building a barn/shop, and constructing a 4,940 square-foot warehouse, each of which was approved by the County without issue. As noted previously, the warehouse permit was issued after Kulin gave notice he intended to use it for commercial storage in connection with his home occupation. Additionally, although an interoffice complaint was filed in August of 2006, stating that construction of the warehouse appeared to be in connection to "a business with employees on [the] property" in violation of the Code, Kulin was not provided with notice of that violation until December of 2006. Moreover, in the nearly four months that it took the County to issue notice of the violation to Kulin, the warehouse had already been constructed at a cost of $120,000 to Kulin. Thus, to deny Kulin the use of the warehouse after

Page 18 - ORDER

permitting him to construct it would, given the chronology of this case, be unreasonable.

Second, in considering the more "intangible but very real human costs" associated with Kulin's disability, it is evident that it would be unreasonable to now deny Kulin the use of his increased storage space. Working from home allows Kulin to take the frequently needed rest breaks that allow him to work a full day and to feel safe and comfortable. Over the course of approximately 14 years, Kulin has cultivated a business on his property that allows him to accommodate his disability, to be self-reliant, and to support his family. Thus, to deny Kulin the use of the warehouse would come at a high human cost.

Third, and perhaps the most important factor, the requested accommodation has an inconsequential impact on the surrounding agricultural land use. In the course of Kulin's business, merchandise is delivered to his property by one large truck every 60 days and merchandise is picked up for delivery by UPS on a daily basis while all other business activities occur entirely within the business structures. Given these characteristics of the business, the Hearings Officer found that the operating characteristics of Kulin's business are compatible with the surrounding land uses. Additionally, Tom Anderson, the County's Community Development Director, has stated that the impact of Kulin's business on the Home Occupation Program would "probably be negligible or very minor." (Anderson Depo. at 142-44, 159-60 ). Lastly, it is significant that the County initially approved construction of the warehouse when it granted Kulin a building permit. Presumably, the County would not have approved the construction of the warehouse if the County believed that the warehouse would negatively impact the comprehensive plan to preserve and protect EFU-zoned land for agricultural uses. Although the County asserts that its approval was based on the belief that the warehouse would be used for personal rather than for business storage, the inconsequential impact

Page 19 - ORDER

of the warehouse on the surrounding agricultural land use remains essentially the same whether the structure is used for personal or business storage. Thus, allowing Kulin's continued use of the warehouse does not fundamentally alter the nature of the Home Occupation Program.

Finally, there is little danger that permitting Kulin's continued use of the warehouse will set a precedent for others to circumvent the Home Occupation Code in order to convert farm land into non-farm related business uses. This matter arises under the ADA, and the issue is whether a severely disabled individual is entitled to an accommodation to allow him to participate in the Home Occupation Program. Each request for such an ADA accommodation related to the Home Occupation Code must first be determined to be necessary and reasonable. Moreover, a determination of whether a requested accommodation is reasonable requires a case-by-case analysis. Thus, whether a requested accommodation is necessary and reasonable as well as whether it would fundamentally alter the nature of the Home Occupation Program will depend upon the specific circumstances of each case. Therefore, there is no danger of opening the floodgates by granting Kulin's requested accommodations under the circumstances of his case.

## II. FHAA Claim

The Fair Housing Amendments Act (FHAA), in an amendment of the Fair Housing Act (FHA), provides that it is unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Discrimination is defined to include refusing to make reasonable accommodations in "rules, policies, practices, or services" when necessary to afford a person with a handicap "equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604 (f)(3)(B). The FHA defines a dwelling as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a

Page 20 - ORDER

residence by one or more families. 42 U.S.C. § 3602(b). In determining whether a dwelling is a residence under the Act, courts look to the ordinary meaning of "residence" adopted in United States v. Hughes Mem'l Home, 396 F. Supp. 544, 548-549 (W.D. Va. 1975). Villegas v. Sandy Farms, Inc., 929 F. Supp. 1324, (D. Or. 1996). The Hughes Court defined a residence as a "temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." Hughes, 396 F. Supp. at 549.

The County contends that plaintiff's claim has nothing to do with the dwelling on his property used as a residence and that even if it did, the requested accommodation is not necessary or reasonable.

Kulin contends that he is unable to earn a living other than by conducting a home occupation. By conducting a home occupation, Kulin is able to work and afford the residence of his choice. Moreover, the FHAA is intended "to protect the right of handicapped persons to live in the residence of their choice . . ." Giebler v. M&B Assocs., 343 F.3d 1143, 1146-47 (9th Cir. 2003). Thus, Kulin asserts that the County's refusal to grant his requested accommodation in its entirety denies him the opportunity to earn a living, and, therefore, to live in the residence of his choice.

Given the ordinary meaning of the term "residence" adopted in Hughes, I find that the application of the FHAA does not apply to Kulin's storage warehouse as it is not his temporary or permanent dwelling place, abode, or habitation. As such, the FHAA does not apply to the issues involved in this matter, and, therefore, Kulin's FHAA claim is dismissed.


## CONCLUSION

For the reasons stated, plaintiff's motion (#90) for partial summary judgment is granted to the

Page 21 - ORDER

extent that the Court finds that he is entitled to an additional employee and the use of the warehouse storage space for his current home occupation as reasonable accommodations under the ADA to allow him to participate in defendant's Home Occupation Program.

Defendant's motion ( #114 ) for summary judgment is granted to the extent that that part of the ADA claim which is based on deliberate indifference is dismissed, and the FHAA claim is dismissed. The remainder of the motion is denied.

The parties motions (#135, #141) to strike certain replies are denied. Plaintiff's motion (#143) to allow submission of additional legal authorities and defendant's evidentiary objections contained in its briefs are denied as neither had an effect on the outcome of the findings herein.

DATED this _31st_ day of May, 2012.

_____
THOMAS M. COFFIN
United States Magistrate Judge